

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ALONZO TARELL JONES,§<br>     Petitioner,§<br>§<br>vs.§<br>§<br>UNITED STATES OF AMERICA,§<br>     Respondent.§ | §<br>§<br>§<br>Criminal Action No.: 3:19-986-MGL-14<br>Civil Action No.: 3:23-811-MGL<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER
GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT,
DENYING PETITIONER'S SECTION 2255 MOTION,
DENYING PETITIONER'S MOTION TO APPOINT COUNSEL,
AND DEEMING AS MOOT PETITIONER'S REMAINING MOTION**

## I.     INTRODUCTION

Petitioner Alonzo Tarell Jones's (Jones), who is representing himself, filed this 28 U.S.C. § 2255 (Section 2255) motion to vacate his sentence against Respondent United States of America (the government). He also filed a motion to appoint counsel. The government responded to Jones's Section 2255 motion and moved for summary judgment.

Having carefully considered the motions, the responses, the replies, the supplement, the record, and the applicable law, the Court will grant the government's motion for summary judgment, deny Jones's Section 2255 motion, and deny Jones's motion to appoint counsel.

## II.     FACTUAL AND PROCEDURAL HISTORY

A federal grand jury indicted Jones for conspiracy to possess with intent to distribute and distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.

Pursuant to a written plea agreement, Jones, then represented by Russell Brown (Brown), pled guilty to a lesser included offense.  As is relevant here, the plea agreement provides:

> [Jones] represents to the [C]ourt that he has met with his attorney on a sufficient number of occasions and for a sufficient period of time to discuss [his] case and receive advice; . . . that [Jones] and his attorney have discussed possible defenses, if any, . . . including the existence of any exculpatory or favorable evidence or witnesses . . . .
>
> [Jones] is aware that 18 U.S.C. § 3742 and 28 U.S.C. § 2255 afford every defendant certain rights to contest a conviction and/or sentence.  Acknowledging those rights, [Jones], in exchange for the concessions made by the [g]overnment in this [p]lea [a]greement, waives the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255.  This waiver does not apply to claims of ineffective assistance of counsel, prosecutorial misconduct, or future changes in the law that affect [Jones]'s sentence.

Plea Agreement ¶¶ 5–6.

On February 24, 2022, the Court sentenced Jones to ninety-six months of imprisonment, followed by three years of supervised release.  The same day, Jones signed a waiver of his right to appeal.

Jones filed this Section 2255 motion on February 16, 2023.  The government responded, and Jones replied.  The Court initially granted the motion with respect to Jones's claim Brown was ineffective in failing to file a notice of appeal.  Jones, however, later acknowledged he was unable to file a direct appeal given the waiver in his plea agreement.  Accordingly, the Court vacated its prior order and reinstated Jones's Section 2255 motion.

After the government responded to Jones's Section 2255 motion, Jones filed a reply, and the government filed a supplemental response. The government also filed a motion for summary judgment, to which Jones responded. Jones further filed a motion to appoint counsel. The Court, having been fully briefed on the relevant issues, will now adjudicate the motions.

### III.     STANDARD OF REVIEW

#### A.     *Section 2255 generally*

A prisoner in custody under sentence of a federal court may move the court which imposed the sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Four grounds exist upon which relief may be claimed under 28 U.S.C. § 2255(a): (1) where the sentence was imposed in violation of the Constitution or federal law; (2) where the Court was without jurisdiction to impose such a sentence; (3) where the sentence was in excess of the maximum authorized by law; and (4) where the sentence is otherwise subject to collateral attack.

#### B.     *Prosecutorial misconduct claims*

"The test for reversible prosecutorial misconduct generally has two components: that '(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.'" *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988) (quoting *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985)), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137 (1995).

#### C.     *Ineffective assistance of counsel claims*

The Sixth Amendment's right to counsel has been interpreted as giving "a person accused of a federal or state crime . . . the right to have counsel appointed if retained counsel cannot be

obtained." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). "It has long been recognized that the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) "counsel's performance was deficient" (the performance prong) and (2) "the deficient performance prejudiced the defense" (the prejudice prong). *Strickland*, 466 U.S. at 687.

Under the performance prong, the Court considers whether counsel's performance was that of reasonably effective assistance under prevailing professional norms. *Id.* at 688–90. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Indeed, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.*

To satisfy the prejudice prong, a petitioner "must show . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, the Court's inquiry is whether the petitioner's sentence or conviction "would reasonably likely have been different absent the errors." *Id.* at 696. The petitioner must affirmatively prove prejudice. *Id.* at 693.

In the context of a guilty plea, the performance prong of the *Strickland* test is unaffected. The prejudice prong, however, mandates a petitioner show "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693).

### D.     *Statements made during Rule 11 proceedings*

"Statements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea." *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)).  This is so because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74.

"The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* (citations omitted).  To adopt a more lenient approach "would eliminate the chief virtues of the plea system[:] speed, economy, and finality." *Id.* at 71.

### E.     *Evidentiary hearing requirement*

In the Section 2255 context, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).  In other words, "[a] hearing is not required on a [Section] 2255 motion if the record of the case conclusively shows . . . petitioner is entitled to no relief." *United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010).

As such, "'[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to' stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing, because none of these would be admissible evidence at an evidentiary hearing." *United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (quoting *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987)).

## IV.     DISCUSSION AND ANALYSIS

Jones advances three grounds for which he says he is entitled to relief. The government contends it should be granted summary judgment on all Jones's grounds because they are either procedurally barred or lack merit. The Court will consider each ground below.

### A.     *Ground One: Whether the government engaged in prosecutorial misconduct*

Jones first argues the government engaged in prosecutorial misconduct by denying him meaningful access to discovery materials. Jones insists any procedural default as to this claim should be excused because his plea agreement contained a Section 2255 and appellate waiver.

The government, on the other hand, argues Jones procedurally defaulted this claim by failing to raise it on direct appeal. The government contends Jones is unable to demonstrate either cause that would excuse his default or actual prejudice from his purported lack of meaningful access to discovery materials.

As the Supreme Court has explained, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate . . . 'cause' and actual 'prejudice[.]'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (first quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986); and then quoting *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). Here, however, Jones has neglected to establish cause. Although Jones waived his right to direct appeal, the waiver expressly excludes claims of prosecutorial misconduct. In other words, Jones could have raised this claim on direct appeal notwithstanding the appellate waiver in his plea agreement. And, because he failed to do so, this

claim is procedurally barred. The Court will therefore grant summary judgment to the government as to Ground One.

### B.     *Ground Two: Whether Brown was ineffective in failing to communicate with Jones and neglecting to review discovery materials with him*

As an initial matter, in Ground Two, Jones appears to contend Brown was ineffective in declining to appeal the Court's order denying his motion for meaningful access to discovery. But, Jones has since clarified the "[p]etition did not allege [Brown] was ineffective for failing to file a Notice of Appeal." Notice That No Appeal of the Amended Judgment Will Be Filed at 1. The Court will therefore refrain from addressing this portion of Ground Two.

Turning to the remainder of Ground Two, Jones argues Brown was ineffective in failing to communicate, and neglecting to review discovery materials, with him. For support, Jones submits a letter in which Brown advised Jones of his appointment, explained his office rejects collect calls and three-way calls, and implied he would discuss the case exclusively with Jones.

The government maintains the plea agreement, as detailed above, and Jones's statements in open court indicate he was satisfied with Brown's representation. The government notes Brown met with Jones on six separate occasions to review his discovery materials and prepare for sentencing. And, at the sentencing hearing, the government asserts Jones "admitted to meeting with Brown[] [and] admitted to having the opportunity to review [and] discuss the calls with his attorney and private investigator[] regarding the reliability of the witnesses who provided statements against him." Government's Supplement at 4. The Court agrees with the government.

Brown's letter to Jones provides information about the kinds of communication in which his office would engage and advises Jones to refrain from speaking to others, especially law enforcement and prosecutors, about his case. The Court is unable to see how any portion of the

7

letter could fairly be construed as "stating [Brown] will not communicate with [Jones] in any way for any reason . . . ." Section 2255 Motion at 3. Rather, the Court is persuaded Brown was sufficiently communicative with Jones, undercutting this portion of Ground Two.

Nor has Jones set forth any basis upon which the Court could reasonably conclude Brown failed to review discovery materials with him.

Brown attests he visited the Lexington County Detention Center five times to individually meet with Jones, review discovery materials with him, and discuss his case. Brown also selected a private investigator, Russell Dean (Dean), to assist him in interviewing witnesses and preparing Jones's case for trial. On at least one occasion, Dean met with Jones to review the intercepted wiretap communications between Jones and his drug supplier. And, at least twice, Brown and Dean jointly met with Jones to review discovery materials with him.

Further, as the Court noted above, Jones agreed "he ha[d] met with his attorney on a sufficient number of occasions and for a sufficient period of time to discuss [his] case and receive advice[.]" Plea Agreement ¶ 5. Indeed, at Jones's change of plea hearing, Jones stated he was satisfied with Brown's representation and was unable to identify anything Brown had yet to do for him. *See* Change of Plea Hearing Transcript at 9 (responding "Yes, [s]ir" to the Court's question, "[A]re you satisfied with the counsel, representation, and advice given to you in your case by your attorney?"); *id.* (answering "No, sir" to the Court's inquiry, "Is there anything you want your attorney to do for you at this time that your attorney has not done?"). Similarly, at Jones's sentencing hearing, Jones informed the Court Brown met with him to discuss the government's plea offer, and Dean reviewed the relevant wiretap communications with him. *See* Sentencing Hearing Transcript at 74 ("Me and [Dean] went over the phone calls . . . . On July 9th, Mr. Brown

came to me with the plea agreement for an indictment for 500 grams or more. And I told him I was not taking it.").

For all these reasons, the Court determines the record refutes Jones's allegations Brown either failed to communicate, or neglected to review discovery materials, with him. Accordingly, the Court will grant summary judgment to the government as to Ground Two, as well.

### C.     *Whether Brown was ineffective in failing to file a motion to suppress and declining to subpoena two witnesses to testify at Jones's sentencing hearing*

Finally, Jones argues Brown was ineffective in failing to file a motion to suppress and in declining to subpoena two witnesses to testify at his sentencing hearing. Jones challenges certain statements his drug supplier, Miguel Cantu-Ochoa (Cantu-Ochoa), made as to the quantity of cocaine Jones purchased from him. Jones alleges Cantu-Ochoa's proffer conflicts with the intercepted wiretap communications between himself and Cantu-Ochoa, as well as with the proffer of cooperating witness Harold Jamaul Coleman (Coleman). Jones insists Brown should have moved to suppress Cantu-Ochoa's inconsistent statements and subpoenaed both Cantu-Ochoa and Dean to testify at his sentencing hearing.

The government, however, asserts Brown "did not file any suppression motions or call any witnesses for [Jones]'s sentencing hearing to contest his drug weight because he saw 'no tactical advantage that [Jones] would gain.'" Government's Supplement at 5 (quoting Brown's Affidavit at 3). Brown came to this decision, the government maintains, after consulting with Jones and Dean, reviewing the relevant wiretap communications, engaging in plea negotiations, and objecting to the drug weight calculation in Jones's presentence investigation report (PSR). Simply put, the government insists "[t]his was a strategic decision made by [Brown] after evaluating the circumstances in play." *Id.*

Where an ineffective-assistance-of-counsel claim is based on counsel's failure to file a

9

motion to suppress, *Strickland*'s prejudice prong requires the movant to prove the motion would have been granted. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). But, here, Jones neglects to allege the motion was meritorious. Nor could he reasonably do so.

The PSR held Jones accountable for two kilograms (2,000 grams) of cocaine and twenty-eight grams of fentanyl. Brown filed a written objection to this attributable drug weight, arguing wiretap communications between Jones and Cantu-Ochoa reflect Jones purchased only 198.447 grams of cocaine. And, at the beginning of Jones's sentencing hearing, Brown acknowledged the dispositive issue for the Court's consideration was whether the physical evidence supported the attributable drug weight established in the PSR. Accordingly, the Court heard testimony from Federal Bureau of Investigation Special Agent Kevin Conroy (Conroy) regarding the quantity of drugs Jones purchased from Cantu-Ochoa.

The record demonstrates Brown attempted to attack Cantu-Ochoa's credibility through his extensive cross-examination of Conroy. Indeed, during cross-examination, Brown addressed the precise inconsistency issues Jones now advances. *See* Sentencing Hearing Transcript at 27–28, 33–34 (Brown's cross-examination of Conroy regarding the inconsistency between Cantu-Ochoa's proffer statement Jones paid him $9,000 for four ounces of cocaine and wiretap communications indicating Cantu-Ochoa charged Jones $950 per ounce of cocaine); *id.* at 24–25, 34 (Brown's cross-examination of Conroy regarding the inconsistency between Cantu-Ochoa's proffer statement Coleman delivered a half kilogram of cocaine to Jones and Coleman's proffer statement he met with Jones only twice). Further, the Court independently questioned Conroy about the drug weight attributable to Jones before receiving arguments from the government, Brown, and Jones himself.

Simply put, the Court already heard, considered, and rejected the arguments now advanced

by Jones. The Court is thus convinced any motion to suppress filed by Brown would have been denied. Accordingly, Jones is unable to demonstrate he was prejudiced by any error of Brown in failing to file such a motion.

Moreover, the Court is unconvinced Brown was ineffective in declining to subpoena Cantu-Ochoa and Dean to testify at Jones's sentencing hearing.

Jones has failed to articulate, beyond a base allegation, any manner in which the testimony of Cantu-Ochoa and Dean would have impacted his sentence. As an example, Jones neglects to assert his attributable drug weight would have been lower had these witnesses testified. Rather, Jones appears to contend Cantu-Ochoa and Dean could have clarified any discrepancies regarding the number of times he interacted with Cantu-Ochoa. But, this falls well short of establishing constitutionally deficient representation and actual prejudice.

The Court will therefore grant summary judgment to the government as to Ground Three, too.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court the government's motion for summary judgment, ECF No. 1457, is **GRANTED**, and Jones's Section 2255 motion, ECF No. 1289, is **DENIED**. Moreover, inasmuch as the record conclusively demonstrates Jones is unentitled to relief under Section 2255, his request for a hearing and motion to appoint counsel, ECF No. 1704, are also **DENIED**.

As the result of the above rulings, Jones's remaining motion to reconsider, ECF No. 1452, is necessarily **DEEMED AS MOOT**.

Finally, to the extent Jones requests a certificate of appealability from this Court, that certificate is **DENIED**.

**IT IS SO ORDERED.**

Signed this 30th day of May 2025, in Columbia, South Carolina.

                                                      s/ Mary Geiger Lewis  
                                                      MARY GEIGER LEWIS  
                                                      UNITED STATES DISTRICT JUDGE

*\*\*\*\*\**  
**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this Order within sixty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.